## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GORDON CLARK, *in his individual capacity, and in his capacities as husband, sole fiduciary, sole beneficiary, and sole creditor of the Estate of Lillian J. Clark Plaintiffs,* | ) ) ) ) ) ) | 3:23-CV-1527 (SVN) |
| v. | ) ) | |
| STATE OF CONNECTICUT, *et al.,* *Defendants.* | ) ) | September 30, 2024 |

### RULING ON DEFENDANTS' MOTIONS TO DISMISS

Sarala V. Nagala, United States District Judge.

In this action, *pro se* Plaintiff Gordon Clark, acting in his individual capacity and as the "sole fiduciary, sole beneficiary, and sole creditor" of his deceased wife's estate, has sued forty-two Defendants for alleged constitutional violations relating to the foreclosure of the Clarks' home. This is the second federal suit Plaintiff has initiated stemming from these events. *See Clark et al. v. Santander Bank et al.*, No. 3:22-cv-39 (SVN) (D. Conn.).[1]

The Defendants in this action fall into several distinct categories:

(1) the State Defendants (State of Connecticut; The Office of Governor Ned Lamont; Governor Ned Lamont; The Office of the Attorney General; Attorney General William Tong; the Connecticut Department of Consumer Protection; Michelle H. Seagull, the former Commissioner of the Connecticut Department of Consumer Protection; the Connecticut Judicial Branch Statewide Grievance Committee; and Attorneys

---

[1] In Case No. 22-cv-39 (SVN), which names many of the same Defendants as here, the Court first dismissed the claims of Gordon Clark as executor of the Estate of Lillian Clark, finding that he could not represent the Estate in a *pro se* capacity. *See Clark*, D. Conn. No. 3:22-cv-39 (SVN), Orders, ECF Nos. 133, 154, 159. Plaintiff appealed that order; the appeal remains pending with the U.S. Court of Appeals for the Second Circuit. *Estate of Lillian J. Clark et al. v. Santander Bank, N.A. et al.*, No. 22-2965 (2d Cir.). In the meantime, the Court granted all of the Defendants' motions to dismiss Mr. Clark's claims and issued an indicative ruling stating that it would grant Defendants' motions to dismiss the Estate Plaintiff's claims if the Court of Appeals were to remand the case for that purpose. *See Clark*, No. 3:22-cv-39 (SVN), 2023 WL 7110558 (D. Conn. Oct. 27, 2023). As part of that ruling, the Court allowed Clark leave to amend. *See id.* at *22; *see also Clark*, No. 3:22-cv-39 (SVN), Order, ECF No. 201. He did not file an amended complaint; therefore, the Court directed the Clerk to enter judgment for Defendants as to Plaintiff Clark's individual claims, and partial judgment thereafter entered. *Clark*, No. 3:22-cv-39 (SVN), Order, ECF No. 205; Partial J., ECF No. 206. No judgment has entered on the Estate Plaintiff's claims, given the pending appeal.

Christopher L. Slack, John J. Quinn, Jr., and Eugene J. Riccio, all sued in their capacity as Grievance Counsel to the Statewide Grievance Committee);

(2) the Judicial Defendants (State of Connecticut Judicial Branch; Connecticut Superior Court Judges Matthew Joseph Budzik and Claudia A. Baio; and Connecticut Appellate Court Judges Eliot D. Prescott; Bethany J. Alvord; Nina F. Elgo; and Hope C. Seeley);

(3) the Barry, Barall Defendants (Barry, Barall, Taylor & Levesque, LLC and Brendon P. Levesque);

(4) the Santander Bank Defendants (Santander Bank, N.A.; Timothy Wennes; Pierre Habis; Kenneth O'Neill; and John or Jane Doe);

(5) the Brock Defendants (Brock and Scott, PLLC; Thomas E. Brock; Gregory A. Scott; Lawson Williams III; Sara M. Buchanan; Adam L. Bendett; Randall S. McHugh; Jeffrey M. Knickerbocker; Dominick D. Neveux; Joseph Abraham; and Mark A. Piech);

(6) K&L Gates and Scott Powell (K&L Gates, LLP; Christopher L. Nasson; Sean R. Higgins; and Scott Powell); and

(7) Attorney Ridgely Whitmore Brown.

The Court previously *sua sponte* dismissed the Judicial Defendants from this action insofar as Plaintiff's claims sought monetary, injunctive, and retrospective declaratory relief against them, given that they have absolute judicial immunity for the actions alleged in the Complaint, which were all judicial in nature and not taken in a complete absence of jurisdiction. *See* Order to Show Cause, ECF No. 10 (citing cases); Order of Dismissal, ECF No. 19. Plaintiff appealed that decision. *See* Am. Notice of Appeal, ECF No. 84. The Court of Appeals dismissed the appeal because the order of dismissal was not a final, appealable order. *See* Mandate, ECF No. 89.

The remaining six categories of Defendants have filed motions to dismiss the complaint on various grounds. *See* ECF Nos. 28–29 (Santander Defendants); ECF No. 38 (Brock Defendants); ECF No. 62 (State Defendants); ECF No. 63 (K&L Gates and Scott Powell); ECF No. 66 (Barry, Barall Defendants); ECF No. 82 (Brown). Plaintiff filed a joint response to all of the motions to dismiss, ECF No. 87. For the reasons explained below, all of the motions to dismiss are

GRANTED, without leave to amend.  The Court dismisses all of the pending federal claims and declines to exercise supplemental jurisdiction over the remaining state law claims.

## I.       FACTUAL BACKGROUND

The facts alleged in the Complaint, ECF No. 1, are accepted as true for the purpose of the present motions to dismiss.[2]  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Gordon and Lillian Clark[3] were married for twenty-seven years before she passed away in October of 2020.  ECF No. 1 ¶ 1.[4]  Prior to her death, Lillian owned a home in Enfield, Connecticut.  *Id.* ¶ 6.

On May 1, 2019, Santander Bank, N.A. sent a letter addressed to "Lillian Byron" regarding delinquent property taxes, which threatened to foreclose on the home unless the Clarks paid a lump sum of $37,575.86.  *Id.* ¶ 24.  According to Plaintiff, however, the Clarks were current on their property taxes before this letter was sent.  *Id.*; *see also id.* ¶ 31(1)–(2).

On November 22, 2019, Santander filed a complaint against the Clarks[5] in Connecticut Superior Court, seeking reformation of the mortgage (allegedly because it did not contain a "valid legal property description") and foreclosure of the mortgage as reformed.  *Id.* ¶¶ 25–26, 31(3).  On April 10, 2023, Santander, through its attorney Defendant Knickerbocker, filed a pleading "falsely claiming a non-jury trial."  *Id.* ¶ 28.  Former Defendant Judge Baio of the Connecticut Superior

---

[2] The Complaint contains many facts that are irrelevant to the instant action.  For purposes of simplicity, the Court recounts only those facts that may bear on the legal issues in the instant litigation.  Additionally, although the Court may also consider the attachments to the complaint in deciding a motion to dismiss, it finds the attachments largely irrelevant to disposition of the motions to dismiss.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).

[3] For ease of reference, the Court will refer to Gordon Clark as "Plaintiff," in the singular, and will refer to Lillian Clark by her first name.  Where necessary, the Court will refer to Plaintiff Estate of Lillian J. Clark as the "Estate Plaintiff."

[4] The Complaint has several sets of paragraphs with duplicative paragraph numbering.  For purposes of the factual background section, the Court's citations are to the numbered paragraphs contained in the Complaint's Statement of Facts section, which begin at ECF No. 1, page 15.

[5] Because Plaintiff Clark had a lien on the property, he was also named as a co-defendant in the foreclosure action.  *See Santander Bank N.A. v. Lillian J. Clark, et al.*, No. HHD-CV19-6120472-S (Conn. Super. Ct.).

Court conducted a remote bench trial in the foreclosure action on May 2, 3, and 4, 2023; during this trial, Plaintiff allegedly was "repeatedly, unjustly, and unlawfully denied his due process of law rights," including because he was allegedly denied the opportunity to present exhibits and witnesses and denied a jury trial. *Id.* ¶ 29. Plaintiff also alleges that Judge Baio ruled on various motions without issuing memoranda of decision. *Id.* ¶¶ 33–51. Following Judge Baio's decision finding against Plaintiff, *see Clark*, 2023 WL 7110558, at *13, Plaintiff filed a motion to compel transcript delivery with the Connecticut Appellate Court, which that court denied. ECF No. 1 ¶¶ 52–53. Plaintiff then filed for bankruptcy, seeking the protection of the automatic bankruptcy stay to prevent the foreclosure of the home, *id.* ¶ 54, and filed a petition for review and writ of mandamus in the Connecticut Supreme Court when the Connecticut Appellate Court denied his motion for reconsideration *en banc*, *id.* ¶¶ 55–57.

Separately, Plaintiff filed grievance complaints with the Connecticut Statewide Grievance Committee and its counsel, Defendants Slack, Quinn, and Riccio, concerning alleged judicial abuses. *Id.* ¶ 58. He also notified Defendants Levesque, Attorney General Tong, and then-Department of Consumer Protection Commissioner Seagull of these alleged abuses, to no avail. *Id.* The Statewide Grievance Committee repeatedly failed to schedule a hearing on Plaintiff's complaints, allegedly because bar associations are "captured, and/or corrupted, and/or impotent to hold their legal colleagues accountable." *Id.* ¶ 60.

Plaintiff then alleges that "the majority of the Defendants have agreed verbally and/or in writing to cooperate, coordinate, and/or conspire against the Plaintiffs in this matter in an ongoing effort to deny the Plaintiffs their state and federal constitutionally protected and civil rights to due process of law." *Id.* ¶ 62. As an example, Plaintiff notes that he had had preliminary conversations with Defendant Brown about representing him in his pending Superior Court and federal court

matters. *Id.* ¶ 63. Defendant Higgins apparently got wind of this potential representation and corresponded with Defendant Brown about Plaintiff potentially withdrawing his then-pending federal complaint (in D. Conn. No. 3:22-cv-39), in favor of proceeding with his Superior Court action—despite that Plaintiff had not engaged Defendant Brown to represent him. *Id.* ¶ 65. This supposed coordination between Defendants Brown and Higgins "stunned and sickened" Plaintiff, *id.* ¶ 70, causing a flurry of filings in Case No. 22-cv-39. *See Clark*, No. 22-cv-39 (SVN), Emergency Mot. for Cease & Desist Order, ECF No. 96; Mot. for Sanctions, ECF No. 97; Mot. for Subpoena & Expedited Hr'g Order, ECF No. 98. Plaintiff believes Defendants Higgins and Brown acted unethically. *E.g.*, ECF No. 1 ¶ 73.

Although the Complaint spans sixty-two pages with exhibits, this is the sum total of the relevant facts. To the extent any further information in the Complaint is relevant to the Court's decision, it will be discussed below. Based on these facts, Plaintiff has brought various claims under 42 U.S.C. §§ 1983, 1985, and 1986, and various provisions of the Connecticut Constitution and state law:

- Count One (all Defendants): alleging violation of Plaintiff's right to a jury trial.

- Count Two (all Defendants): alleging violation of Plaintiff's right to an impartial trial.

- Count Three (all Defendants): alleging denial of Plaintiff's property rights.

- Count Four (all Defendants): alleging violation of Plaintiff's equal protection rights, as he was treated differently because he was proceeding *pro se*.

- Count Five (all Defendants): alleging conspiracy to interfere with Plaintiff's civil rights under 42 U.S.C. § 1985.

- Count Six (all State Defendants):  alleging violation of Plaintiff's equal protection rights and alleging "state liability" and a "policy claim" under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

- Count Seven (all Defendants):  alleging failure to intervene in the violation of Plaintiff's constitutional rights under 42 U.S.C. § 1986.

- Count Eight (all Defendants):  alleging negligence.

- Count Nine (all Defendants except Governor Lamont, Attorney General Tong, and Commissioner Seagull):  alleging intentional infliction of emotional distress.

- Count Ten (all Defendants except Governor Lamont, Attorney General Tong, and Commissioner Seagull):  alleging negligent infliction of emotional distress.

- Count Eleven (all Defendants):  alleging assumption of duty.

- Count Twelve (all Defendants except Governor Lamont, Attorney General Tong, and Commissioner Seagull):  alleging breach of the covenant of good faith and fair dealing.

- Count Thirteen (all Defendants except Governor Lamont, Attorney General Tong, and Commissioner Seagull):  alleging violation of the Connecticut Unfair Trade Practices Act ("CUTPA").

- Count Fourteen (all "Respondeat Superior" Defendants):  alleging negligent hiring, supervision, and training.

- Count Fifteen (all "Respondeat Superior" Defendants):  alleging respondeat superior.

- Count Sixteen (all "Respondeat Superior" Defendants):  alleging indemnification.

*Id.* at 37–58.  Plaintiff seeks declaratory relief concerning the alleged constitutional violations; injunctive relief in the form of a "full, complete, and third-party investigation into the State of Connecticut Judicial Branch's unconstitutional and unlawful practice" of denying a *pro*

*se* litigant his rights to a jury trial and other due process rights; monetary damages in the amount of $1.1 billion and punitive damages of $1 billion; and attorney's fees, non-taxable expenses, and costs. *Id.* at 59.

## II.   LEGAL STANDARDS

The remaining Defendants have moved to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6). The relevant legal standards are set forth below.

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss a case for lack of subject matter jurisdiction. A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

Federal Rule of Civil Procedure 12(b)(2) permits a defendant to raise a lack of personal jurisdiction as a defense by motion before a responsive pleading. A plaintiff bears the burden of establishing personal jurisdiction over the defendant. *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 580 (2d Cir. 1993).

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a case or cause of action for failure to state a claim upon which relief can be granted. When determining whether a complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 677–78 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. This plausibility standard is not a

"probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.* In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

The Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008), and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

These pleading standards apply to self-represented parties. It is true that Courts are under an obligation to extend "special solicitude" to *pro se* litigants and ought to read their pleadings "to raise the strongest arguments that they suggest." *Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 387 (2d Cir. 2015) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006)) (internal quotation marks omitted). But at the same time, a *pro se* complaint must meet the basic pleading standards outlined above to survive a motion to dismiss. *Id.* (citing *Twombly*, 550 U.S. at 570).

The Court first addresses the portions of Defendants' motions to dismiss relating to jurisdictional issues, and then addresses their arguments under Rule 12(b)(6).[6] For the reasons set forth below, the Court dismisses all of the pending federal claims and declines to exercise supplemental jurisdiction over the remaining state law claims.

### III.     SUBJECT MATTER JURISDICTION (STATE DEFENDANTS)

The State Defendants, which include entities such as the State of Connecticut, the State of Connecticut Judicial Branch, and the Statewide Grievance Committee, and various individuals sued in their official capacities, move to dismiss the complaint on two grounds:  (1) the complaint is barred by the Eleventh Amendment; and (2) Plaintiff does not have standing to assert an interest in the government's prosecution or non-prosecution of another individual.  ECF No. 62.  As the Court agrees with the State Defendants' Eleventh Amendment argument, it grants the State Defendants' motion to dismiss for lack of subject matter jurisdiction and need not reach their standing argument.

The Eleventh Amendment provides:  "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  "Because of the Eleventh Amendment, States may not be sued in federal court unless they consent to it in unequivocal terms or unless Congress, pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate the immunity."  *Green v. Mansour*, 474 U.S. 64, 68 (1985).  Eleventh Amendment immunity applies beyond states to "state agents and state instrumentalities that are, effectively, arms of a state."  *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d

---

[6] As noted above, the question of whether Plaintiff Clark can represent his deceased wife's estate *pro se* is on appeal. As no Defendant has argued that is a basis for dismissal of the Estate Plaintiff's claims, and given that the issue has not yet been decided by the Second Circuit, the Court declines to dismiss the Estate Plaintiff's claims on this ground and instead addresses them on the merits.

Cir. 2009).  It also applies, in appropriate circumstances, to state officials acting in their official

capacities.  *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007).  As the Eleventh

Amendment "restricts the judicial power under Article III," *Seminole Tribe of Fla. v. Florida*, 517

U.S. 44, 72–73 (1996), a motion to dismiss on the basis of sovereign immunity under the Eleventh

Amendment is properly brought under Rule 12(b)(1).  *Long Island Pure Water Ltd. v. Cuomo*, 375

F. Supp. 3d 209, 215 (E.D.N.Y. 2019).[7]

Neither of the exceptions to Eleventh Amendment immunity apply here.  First, none of the

State Defendants have consented to this suit.  Second, Congress has not unequivocally expressed

an intent to abrogate Eleventh Amendment immunity under 42 U.S.C. §§ 1983, 1985, or 1986,

which are the federal statutes under which Plaintiff has brought claims.  *See Quern v. Jordan*, 440

U.S. 332, 341 (1979) (holding that § 1983, liberally construed to apply to that action, did not

abrogate sovereign immunity); *Chris H. v. New York*, 740 F. App'x 740, 741 (2d Cir. 2018)

(summary order) (noting Congress did not abrogate state immunity for claims brought under

§ 1985); *Finkelman v. N.Y. State Police*, No. 06 Civ. 8705 (JSR), 2007 WL 4145456, at *3

(S.D.N.Y. Nov. 15, 2007) (same for § 1986).  Plaintiff's claims for any damages, including

punitive damages, against the State Defendants are therefore plainly barred by the Eleventh

Amendment, despite Plaintiff's misgivings about the doctrine of sovereign immunity.

---

[7] As this Court has previously recognized, "[n]either the Second Circuit nor the Supreme Court has definitively determined whether the Eleventh Amendment is to be understood as a bar to subject matter jurisdiction or is 'more appropriately viewed as an affirmative defense.'"  *Mallison v. Conn. Off. of Early Childhood*, 634 F. Supp. 3d 21, 29 n.2 (D. Conn. 2022) (quoting *Ripa v. Stony Brook Univ.*, 808 F. App'x 50, 50 n. 1 (2d Cir. 2020)); *see also Allco Fin. Ltd. v. Roisman*, No. 22-2726, 2023 WL 4571965, at *1 (2d Cir. July 18, 2023) (summary order).  The Court believes that the opening phrase of the Eleventh Amendment, which provides that the "[j]udicial power of the United States shall not be construed to extend" to certain suits, suggests that the Amendment limits the subject matter jurisdiction of the Court.  Recognizing the uncertainty, however, the Court dismisses Plaintiff's claims *without* prejudice.  *See Katz v. Donna Karan Co.*, 872 F.3d 114, 121 (2d Cir. 2017) (recognizing that dismissals based on lack of subject matter jurisdiction must be without prejudice).

In addition to the consent and abrogation exceptions, there is also "a well-known exception to [Eleventh Amendment immunity]—established by the Supreme Court in *Ex parte Young* and its progeny—by which suits for prospective relief against an individual acting in his official capacity may be brought to end an ongoing violation of federal law." *Vega v. Semple*, 963 F.3d 259, 281 (2d Cir. 2020). This exception does not apply to Plaintiff's complaint, however, because the complaint cannot fairly be read to encompass an ongoing violation of federal law. Plaintiff's complaints related to his state foreclosure trial occurred in the past and are not ongoing.

To the extent Plaintiff is claiming that the Statewide Grievance Committee's delay in scheduling a hearing on his grievance complaints is an ongoing procedural due process violation, the Court cannot find that it is a plausible one. To prevail on a procedural due process claim, an individual must first show that he or she was deprived of a constitutionally protected property interest before courts consider whether the individual was afforded due process of law. *Spinelli v. City of New York*, 579 F.3d 160, 168 (2d Cir. 2009). Such property interests are created by "existing rules or understandings that stem from an independent source such as state law." *Id.* at 168–69 (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). To have a constitutionally protected property interest, the plaintiff "must have had 'a legitimate claim of entitlement to it.'" *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002) (quoting *Bd. of Regents*, 408 U.S. at 577). Here, Plaintiff has identified no constitutionally protected property interest of which he was deprived with respect to his grievance complaints.[8]

---

[8] In any event, Plaintiff is not entitled to a hearing with the Statewide Grievance Committee on his grievance complaints, to the extent such complaints were brought against judges. The complaint does not specify against whom the grievance complaints have been filed, but references that they were filed to notify the relevant authorities of "ongoing judicial abuses." ECF No. 1 ¶ 58. The Court therefore assumes that the grievance complaints were filed against judges. But the Statewide Grievance Committee does not review complaints against judges; the Judicial Review Council does. *See* Conn. Gen. Stat. § 51-51k (describing formation of Judicial Review Council); *id.* § 51-51l (describing how Judicial Review Council investigates complaints against judges). Plaintiff therefore does not have any right to a hearing with the Statewide Grievance Committee regarding his *judicial* grievance complaints.

Finally, requests for declaratory relief, though equitable in nature, are barred by the Eleventh Amendment when they would serve "to declare only past actions in violation of federal law; retroactive declaratory relief cannot be properly characterized as prospective," such that it would fall under the *Ex parte Young* exception. *See Levantino v. Skala*, 56 F. Supp. 3d 191, 206–07 (E.D.N.Y. 2014) (collecting cases). Plaintiff seeks declarations that his constitutional rights were violated in the past. ECF No. 1 at 59. As the requested declarations are purely retrospective, they are barred by the Eleventh Amendment.

Because Plaintiff's requests for damages, injunctive relief, and declaratory relief against the State Defendants are barred by the Eleventh Amendment, the Court dismisses the complaint against the State Defendants without prejudice, for lack of subject matter jurisdiction.

## IV.   PERSONAL          JURISDICTION          (INDIVIDUAL          SANTANDER DEFENDANTS)

The Santander Defendants are Santander Bank; Timothy Wennes, the CEO of Santander Bank; Pierre Habis, the Senior Executive Vice President and Head of Consumer & Business Banking of Santander Bank; and Kenneth O'Neill, the Senior Vice President and Head of the Customer Service Center Operations of Santander Bank. *Id.* at 4–5. The individual Santander Defendants (Wennes, Habis, and O'Neill) move to dismiss the complaint on the ground that the Court lacks personal jurisdiction over them. ECF No. 29.

The Court concludes that it does not have personal jurisdiction over Defendants Wennes, Habis, and O'Neill; therefore, the complaint against these Defendants is dismissed.[9] To begin, the

---

[9] Plaintiff also mentions "Defendant John or Jane Doe," an "unknown employee of Santander Bank, N.A.," who "placed a value on Lillian J. Clark's life of approximately 31 cents an hour," in the "Parties" section of the Amended Complaint. *See* ECF No. 1 at 5. As Plaintiff has not identified the Doe Defendant and does not provide any specific factual allegations related to the Doe Defendant or his/her connection to Connecticut, that Defendant is likewise dismissed from this action for lack of personal jurisdiction and failure to state a cognizable claim for relief.

Court addresses the showing a plaintiff must make, which "varies depending on the procedural posture of the litigation." *Dorchester Fin. Secs., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013). While a plaintiff bears the "ultimate burden" of establishing jurisdiction over a defendant by a preponderance of the evidence, until an evidentiary hearing is held, the plaintiff "need make only a *prima facie* showing by its pleadings and affidavits that jurisdiction exists." *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986). This *prima facie* showing requires "an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (quoting *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010)). Here, neither party has requested, and the Court has not held, an evidentiary hearing. Thus, Plaintiff is required to make only a *prima facie* showing that this Court possesses personal jurisdiction over the individual Santander Defendants.

Personal jurisdiction presents a two-step analysis: first, the Court must determine whether Connecticut's long-arm statute supports the Court's exercise of personal jurisdiction over the foreign defendant; second, the Court must determine whether such exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Chloé*, 616 F.3d at 163–64.

The individual Santander Defendants contend that Connecticut's long-arm statute does not support the Court's exercise of personal jurisdiction over them, and that, even if it did, such exercise of personal jurisdiction would violate the Fourteenth Amendment's Due Process Clause. Plaintiff has not responded to these arguments in his opposition brief. *See* ECF No. 87.

Connecticut's long-arm statute governing personal jurisdiction in suits against foreign individuals provides, in pertinent part, that a court may exercise personal jurisdiction over any nonresident individual who, in person or through an agent:

> (1) [t]ransacts any business within the state;
> (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act;
> (3) commits a tortious act outside the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if such person or agent (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce;
> (4) owns, uses or possesses any real property situated within the state; or
> (5) uses a computer, as defined in subdivision (1) of subsection (a) of section 53-451, or a computer network, as defined in subdivision (3) of subsection (a) of said section, located within the state.

Conn. Gen. Stat. § 52-59b(a).

The individual Santander Defendants contend that they fit none of these provisions. The complaint in this action alleges even fewer details about the individual Santander Defendants' actions (in Connecticut or anywhere) than Plaintiff's amended complaint in Case No. 22-cv-39 did. There, even with slightly more robust allegations, the Court concluded that it lacked personal jurisdiction over the individual Santander Defendants. *Clark*, 2023 WL 7110558, at *10–12. The Court reaches the same conclusion here.

The complaint does not allege sufficient facts for the Court to find that the individual Santander Defendants transacted business in Connecticut so as to satisfy the long-arm statute. Section 52-59b(a)(1) "authorizes jurisdiction over nonresidents who transact any business within the state provided that the cause of action arises out of such transaction." *New London Cnty. Mut. Ins. Co. v. Nantes*, 303 Conn. 737, 745 (2012). An individual transacts business under this section by engaging in "a single purposeful business transaction." *Id.* Plaintiff has not adequately alleged

a single purposeful business transaction conducted by any of the three individual Santander Defendants.  For instance, there are no particular allegations as to any of these Defendants' roles in the foreclosure of the Clarks' home.  Moreover, Plaintiff has not plausibly alleged that these individual Defendants committed a tortious act either within or outside of the state, nor that they regularly do or solicit business, or engage in any persistent course of conduct or derive substantial revenue from goods used or services rendered in Connecticut.  Finally, Plaintiff has not alleged that these Defendants own, use, or possess real property in Connecticut or use a computer or computer network within the State.  For these reasons, the exercise of personal jurisdiction under Connecticut's long-arm statute would be improper.

The exercise of personal jurisdiction over the individual Santander Defendants would, likewise, violate due process.  "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which [the individual] has established no meaningful contacts, ties, or relations."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (citation and internal quotation marks omitted).  For a court to exercise personal jurisdiction over a defendant consistent with constitutional due process, the defendant must have sufficient "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  The requisite minimum contacts may be satisfied in one of two ways: (1) the court may exercise *general* personal jurisdiction if the defendant's "affiliations with the [forum] State are so continuous and systematic as to render them essentially at home in the forum State"; or (2) the court may exercise *specific* personal jurisdiction if the action arises out of or relates to the defendant's contacts with the forum, even if such contacts are limited to a single or

an occasional act within the forum. *Daimler AG v. Bauman*, 571 U.S. 117, 126–27 (2014) (citations and internal quotation marks omitted).

There are no allegations in the complaint that rise to the level of asserting that the individual Santander Defendants' affiliations with Connecticut are so continuous and systematic as to render them "essentially at home" in Connecticut. Indeed, all of the individual Santander Defendants are alleged to be citizens of Massachusetts. *See* ECF No. 1 at 4–5. Nor are there sufficient allegations to support the exercise of specific personal jurisdiction, as the complaint does not allege anything about the individual Santander Defendants' roles in the foreclosure process or resulting litigation.

Plaintiff's allegations against the individual Santander Defendants are simply too vague and nonspecific to make even a *prima facie* showing of personal jurisdiction. All claims against Defendants Wennes, Habis, and O'Neill are therefore dismissed under Rule 12(b)(2).

## V.     FAILURE TO STATE A FEDERAL CLAIM

The Court next holds that Plaintiff fails to state plausible claims under §§ 1983, 1985, and 1986—the only federal laws cited in the complaint—against the remaining Defendants (the Barry, Barall Defendants; Santander Bank; the Brock Defendants; K&L Gates and Scott Powell; and Attorney Brown).

First, Plaintiff's § 1983 claims against the remaining Defendants fail because he has not alleged that any of the Defendants acted under color of state law. *See* 42 U.S.C. § 1983 (providing for a cause of action against a person who, "under color of" law, deprives another of a constitutional right); *Betts v. Shearman*, 751 F.3d 78, 84 (2d Cir. 2014). All of the remaining Defendants are alleged to be private actors, not state actors. To successfully state a § 1983 claim against a private actor, a plaintiff must "allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act." *Betts*, 751 F.3d at 84. Here,

Plaintiff's allegations fail to plausibly allege that the remaining Defendants acted in concert with any state actor.  To be sure, Santander utilized the state judicial process, through some of the Brock Defendants, to seek reformation and foreclosure of the mortgage on the Clarks' home.  But "use by a private party of the state courts for litigation 'does not clothe persons who use its judicial processes with the authority of the state', as contemplated under the § 1983 state action requirement." *Kamasinski v. Rubin*, 764 F. Supp. 741, 743 (D. Conn. 1991) (quoting *Stevens v. Frick*, 372 F.2d 378, 381 (2d Cir. 1967)); *see also Secard v. Wells Fargo Bank, N.A.*, No. CV 15-499 (JS) (ARL), 2015 WL 6442563, at *3 (E.D.N.Y. Sept. 9, 2015) (dismissing § 1983 claim that "appears to allege that Defendants acted under color of state law by conspiring with the state court in the foreclosure action to deprive the plaintiff of his constitutional rights").  Plaintiff's allegations also do not suggest that any of the other remaining Defendants acted in concert with any state actors.  His § 1983 claims therefore fail.

Plaintiff also fails to plausibly allege a conspiracy between any of the Defendants to deprive Plaintiff of his equal protection rights, as required for his § 1985 claim alleged in Count Five.  "The elements of a claim under § 1985(3) are:  (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, . . .; (3) an act in furtherance of the conspiracy; (4) whereby a person is . . . deprived of any right of a citizen of the United States." *Brown v. City of Oneonta*, 221 F.3d 329, 341 (2d Cir. 2000).  A § 1985 conspiracy "must be motivated by racial animus." *Id.*  Here, Plaintiff has not alleged his race, nor any facts to suggest that the conspiracy was motivated by his race.  Although he alleges that Defendants Higgins and Brown were involved in a conspiracy of some type, it is not alleged to be a conspiracy motivated by racial animus.  Therefore, the Court cannot find that

he has adequately alleged a conspiracy to deprive him of his rights based on his race, and his § 1985 claim must therefore be dismissed.

Finally, Plaintiff in turn fails to plausibly allege a failure to intervene claim under § 1986, because a § 1986 claim "must be predicated on a valid § 1985 claim." *Id.*; *see also* 42 U.S.C. § 1986 (referencing § 1985).

All of Plaintiff's federal law claims (Counts One through Seven) are therefore dismissed.

## VI.   SUPPLEMENTAL JURISDICTION

Having dismissed the federal law causes of action, the Court declines to exercise supplemental jurisdiction over the state law claims raised in Counts Eight through Sixteen. *See* 28 U.S.C. § 1367(c)(3). The Court cannot conclude that retaining jurisdiction over Plaintiff's state law claims would promote the values of economy, convenience, fairness, or comity. *See Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 85 (2d Cir. 2018). This case is not particularly old, and has not advanced because a stay of discovery has been in place. *See* Order, ECF No. 86. Moreover, to the extent that Plaintiff's claims under the Connecticut Constitution raise novel issues of state law, including whether they provide a private right of action, *see* ECF No. 29 at 12 n.6, it is appropriate for the Court to decline supplemental jurisdiction. *See* 28 U.S.C. § 1367(c)(1). Thus, the Court declines to exercise supplemental jurisdiction over Counts Eight through Sixteen.

## VII.   LEAVE TO AMEND

The Court declines to allow Plaintiff leave to amend. First, the Court allowed Plaintiff leave to amend his similar claims in Case No. 22-cv-39, and Plaintiff failed to avail himself of that opportunity. More significantly, though, the Court cannot conclude that the deficiencies it has identified are merely pleading deficiencies that could be remedied in an amended complaint.

Plaintiff has provided no facts to suggest that the private actor Defendants conspired with any state actors and no facts to suggest there was a conspiracy to deprive Plaintiff of equal protection due to his race.  Between this action and the 22-cv-39 action, Plaintiff has submitted hundreds of pages of complaints, briefing, and notices.  In none of these filings has there been even a hint of conspiracy with a state actor or conspiracy to deprive him of his equal protection rights in the foreclosure action because of his race (or Lillian's).  Any such facts, if alleged now, would appear to be manufactured to overcome dismissal.  For these reasons, the Court will not grant Plaintiff leave to amend.  *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (clarifying that where the problem with a cause of action is "substantive" and "better pleading will not cure it," repleading would be futile, and leave to amend is properly denied).

## VIII.   CONCLUSION

For the reasons discussed herein, Defendants' motions to dismiss—ECF Nos. 28–29 (Santander Defendants); ECF No. 38 (Brock Defendants); ECF No. 62 (State Defendants); ECF No. 63 (K&L Gates and Scott Powell); ECF No. 66 (Barry, Barall Defendants); and ECF No. 82 (Brown)—are GRANTED.  The Court therefore dismisses the complaint as against the State Defendants without prejudice, and as against all other Defendants with prejudice.

The Clerk is directed to close this case.

**SO ORDERED** at Hartford, Connecticut, this 30th day of September, 2024.

       */s/ Sarala V. Nagala*
       SARALA V. NAGALA
       UNITED STATES DISTRICT JUDGE